STATE OF CONNECTICUT *v.* JUDITH S. MARKS,
EXECUTRIX (ESTATE OF FRANCES SERAFIN)
(15479)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued November 1—officially released December 31, 1996

*Morris Apter,* for the appellant (defendant).

*Robert A. Nagy,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (state).

BORDEN, J. The sole issue in this appeal[1] is whether, pursuant to General Statutes §§ 17b-93 (a)[2]

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] General Statutes § 17b-93 (formerly § 17-83e) provides in relevant part: "Claim of state for repayment of aid. Exceptions. (a) If a beneficiary of aid under sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclusive, 17b-807 and 17b-808 has or acquires property of any kind or interest in any property, estate or claim of any kind, the state of Connecticut shall have a claim subject to subsections (b) and (c) of this section, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid, subject to the provisions of section 17b-94, to him or in his behalf under sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclusive, 17b-807 and 17b-808; and, in addition thereto, the parents of an aid to dependent children beneficiary shall be liable to repay, subject to the provisions of section 17b-94, to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim, for

and 17b-95,[3] the plaintiff is entitled to all of the assets of the estate of the defendant's decedent as part of a

amounts owing under any order for support of any court or any family support magistrate, including any arrearage under such order, provided household goods and other personal property identified in section 52-352b and real property pursuant to section 17b-79, as long as such property is used as a home for the beneficiary, shall be exempt from such lien. . . ."

[3] General Statutes § 17b-95 (formerly § 17-83g) provides: "State's claim on death of beneficiary or parent of beneficiary. Upon the death of a parent of a child who has, at any time, been a beneficiary under the program of aid to families with dependent children, or upon the death of any person who has at any time been a beneficiary of aid under sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclusive, 17b-807 and 17b-808, except as provided in subsection (b) of section 17b-93, the state shall have a claim against such parent's or person's estate for all amounts paid on behalf of each such child or for the support of either parent or such child or such person under the provisions of sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclusive, 17b-807 and 17b-808 for which the state has not been reimbursed, to the extent that the amount which the surviving spouse, parent or dependent children of the decedent would otherwise take from such estate is not needed for their support. In the case of any person dying after October 1, 1959, the claim for medical payments, even though such payments were made prior thereto, shall be restricted to medical disbursements actually made for care of such deceased beneficiary. Such claims shall have priority over all unsecured claims against such estate, except (1) expenses of last sickness not to exceed three hundred seventy-five dollars, (2) funeral and burial expenses in accordance with section 17b-84 and (3) administrative expenses, including probate fees and taxes, and including fiduciary fees not exceeding the following commissions on the value of the whole estates accounted for by such fiduciaries: On the first two thousand dollars or portion thereof, five per cent; on the next eight thousand dollars or portion thereof, four per cent; on the excess over ten thousand dollars, three per cent. Upon petition by any fiduciary, the probate court, after a hearing thereon, may authorize compensation in excess of the above schedule for extraordinary services. Notice of any such petition and hearing shall be given to the commissioner of administrative services in Hartford at least ten days in advance of such hearing. The allowable funeral and burial payment herein shall be reduced by the amount of any prepaid funeral arrangement. Any amount paid from the estate under this section to any person which exceeds the limits provided herein shall be repaid to the estate by such person, and such amount may be recovered in a civil action with interest at six per cent from the date of demand."

claim for reimbursement for public assistance payments made on behalf of the decedent, or whether, pursuant to General Statutes § 17b-94 (b),[4] the plaintiff is entitled to only 50 percent of the assets of that estate. The defendant, Judith S. Marks, the executrix of the

[4] General Statutes § 17b-94 (formerly § 17-83f) provides: "State's claim against proceeds of cause of action. Assignment of interest in estate to the state. (a) In the case of causes of action of beneficiaries of aid under sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclusive, 17b-807 and 17b-808, subject to subsections (b) and (c) of section 17b-93, or of a parent of a beneficiary of the aid to families with dependent children program, the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received by such beneficiary or such parent after payment of all expenses connected with the cause of action, whichever is less, for repayment under section 17b-93, and shall have priority over all other claims except attorney's fees for said causes, expenses of suit, costs of hospitalization connected with the cause of action by whomever paid over and above hospital insurance or other such benefits, and, for such period of hospitalization as was not paid for by the state, physicians' fees for services during any such period as are connected with the cause of action over and above medical insurance or other such benefits; and such claim shall consist of the total assistance repayment for which claim may be made under the provisions of sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclusive, 17b-807 and 17b-808. The proceeds of such causes of action shall be assignable to the state for payment of the amount due under said section 17b-93, irrespective of any other provision of law. Upon presentation to the attorney for the beneficiary of an assignment of such proceeds executed by the beneficiary or his conservator or guardian, such assignment shall constitute an irrevocable direction to the attorney to pay the commissioner of administrative services in accordance with its terms, except if, after settlement of the cause of action or judgment thereon, the commissioner of administrative services does not inform the attorney for the beneficiary of the amount of lien which is to be paid to the commissioner of administrative services within thirty days of receipt of the written request of such attorney for such information, such attorney may distribute such proceeds to such beneficiary and shall not be liable for any loss the state may sustain thereby.

"(b) In the case of an inheritance of an estate by a beneficiary of aid under sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclu-

estate of the decedent, Frances Serafin, appeals from the summary judgment rendered by the trial court in favor of the plaintiff, the state of Connecticut, on its claim for full reimbursement against the entire estate. The defendant asserts that the plaintiff's claim is limited to 50 percent of the assets of the estate. We affirm the judgment of the trial court.

The facts are undisputed. During the lifetime of the decedent, the plaintiff, pursuant to the medical assistance program known as Medicaid, made public assistance payments on her behalf in the amount of approximately $131,000. The decedent died on September 8, 1994. She was predeceased by her son, John Serafin, who had died intestate on March 23, 1993. The sole asset of his estate was a house, which passed to the estate of the decedent by virtue of the laws of intestacy. At the time of the decedent's death, the house was the sole asset of her estate.

Following the decedent's death, the plaintiff timely presented a claim to the defendant for the full amount of the public assistance payments that it had made. The defendant disallowed the claim, arguing that, pursuant to § 17b-94 (b), the plaintiff is entitled to only 50 percent of the estate as reimbursement. The plaintiff thereupon brought this action and moved for summary judgment. The trial court rendered summary judgment for the full amount of the plaintiff's claim. This appeal followed.

sive, 17b-807 and 17b-808, subject to subsections (b) and (c) of section 17b-93, fifty per cent of the assets of the estate payable to the beneficiary or the amount of such assets equal to the amount of assistance paid, whichever is less, shall be assignable to the state for payment of the amount due under section 17b-93. The court of probate shall accept any such assignment executed by the beneficiary and filed by the commissioner of administrative services with the court prior to the distribution of such inheritance, and to the extent of such inheritance not already distributed, the court shall order distribution in accordance therewith. If the commissioner of administrative services receives any assets of an estate pursuant to any such assignment, the commissioner shall be subject to the same duties and liabilities concerning such assigned assets as the beneficiary."

The defendant claims that the case is controlled by the provision of § 17b-94 (b) that, under certain circumstances, limits the state's reimbursement for public assistance payments to "fifty per cent of the assets of the estate payable to the beneficiary or the amount of such assets equal to the amount of assistance paid, whichever is less . . . ." See footnote 4. The defendant argues that this provision applies in this case, based on the reference in § 17b-94 (b) to the provisions of "17b-79 to 17b-103, inclusive," and the fact that, upon her son's death, title to the house vested in the decedent. The defendant thus asserts that the estate of the decedent should not be disadvantaged by the fact that she died, and that, therefore, the estate should be treated essentially the same as if the plaintiff's claim had been presented against the decedent during her lifetime. The plaintiff argues that § 17b-94 (b) applies only to living public assistance beneficiaries and that the claim is controlled by §§ 17b-93 and 17b-95. We agree with the plaintiff.

We agree with the plaintiff that §§ 17b-93, 17b-94 and 17b-95 must be read together because they set out a general statutory scheme for reimbursement to the state for public assistance payments that the state has made to or for the benefit of public assistance beneficiaries. Section 17b-93 provides the general rule for reimbursement. Under that provision, subject to certain exceptions stated therein, if a public assistance beneficiary "has or acquires property of any kind or interest in any property, estate or claim of any kind, the state of Connecticut shall have a claim . . . against such beneficiary for the full amount paid . . . ." General Statutes § 17b-93 (a). Thus, the general rule is that the state has a claim, for the full amount of its payments, against a public assistance beneficiary who "has or acquires property of any kind."

Section 17b-95 provides another, more specific application of this general rule, namely, the case in which someone who at any time has been a public assistance beneficiary dies leaving an estate. Under that section, subject to certain limitations and exceptions, "upon the death of any person who has *at any time* been a beneficiary of [public assistance] . . . the state shall have a claim against such . . . person's estate for all amounts paid on behalf of . . . such person . . . for which the state has not been reimbursed . . . ." (Emphasis added.) General Statutes § 17b-95. Thus, under this section, upon the death of a person who, at any time, was a public assistance beneficiary, the state may make a claim against that person's estate for the full amount of the public assistance payments made to or for the benefit of that person.

Section 17b-94 (b), upon which the defendant relies, provides one of the exceptions to the general rule of full reimbursement to the state. That subsection provides that, "[i]n the case of an inheritance of an estate by a beneficiary of [public assistance] . . . *fifty per cent of the assets of the estate payable to the beneficiary or the amount of such assets equal to the amount of assistance paid, whichever is less*, shall be assignable to the state for payment of the amount due under section 17b-93." (Emphasis added.) General Statutes § 17b-94 (b). Thus, under this subsection, if a person who is receiving public assistance benefits inherits an estate from someone else, the lesser of one half of that inheritance or the amount of the public assistance benefits paid to the recipient is assignable by the beneficiary to the state toward the full amount reimbursable under § 17b-93.

Unlike the provisions of §§ 17b-93 (a) and 17b-95, however, under which the state's claim against the public assistance beneficiary or his or her estate is for the full amount of the state's public assistance payments,

the maximum amount assignable under § 17b-94 (b) may be for an amount considerably less than that full amount. The purpose of this provision is to encourage public assistance beneficiaries who inherit property from others to seek and accept that property. In the absence of such a provision, public assistance beneficiaries would in many cases have no incentive to obtain their inheritances, because in many cases the entire inheritance would be subject to the state's claim for full reimbursement under § 17b-93. In such cases, the public assistance beneficiaries who have inheritances coming to them would likely waive or forgo them because those inheritances would ultimately go to the state pursuant to the state's claims for full reimbursement. Under § 17b-94 (b), however, a public assistance beneficiary has incentive to take an inheritance, as he or she gets to retain the unassigned balance of that inheritance.

Concomitantly, this provision benefits the state. First, even while the public assistance beneficiary is alive, the state does receive up to 50 percent of the inheritance, whereas, if the beneficiary refused the inheritance, the state would receive nothing. Second, a public assistance beneficiary, by retaining the balance of his or her inheritance, may in many cases thereby become ineligible for continued public assistance due to applicable asset limitation rules. See *Ross* v. *Giardi*, 237 Conn. 550, 552, 680 A.2d 113 (1996); *Forsyth* v. *Rowe*, 226 Conn. 818, 823, 629 A.2d 379 (1993). In those cases, therefore, the state would save money by not having to continue to pay public assistance benefits. Thus, as the plaintiff argues, § 17b-94 (b) applies to living public assistance beneficiaries, because they are the persons to whom this calculus of incentives and benefits applies.

This common sense reading of this statutory scheme is supported by the legislative genealogy and legislative history of § 17b-94. As originally enacted in 1969 as

General Statutes § 17-83f, and until 1982, what is now § 17b-94 applied only to causes of action held by public assistance beneficiaries, and not to inheritances by such beneficiaries, and provided for reimbursement to the state for the full amount of the proceeds of any such cause of action. See General Statutes (Rev. to 1977) § 17-83f. In 1982, the statute was amended by adding a provision regarding inheritances by public assistance beneficiaries, and the same rule of full reimbursement to the state out of such inheritances was applied. See General Statutes (Rev. to 1983) § 17-83f. In 1984, the statute was again amended to reduce the amount of the state's lien against the proceeds of causes of action held by public assistance beneficiaries to the lesser of 50 percent thereof or the amount of assistance paid, but the amendment did not disturb the rule of full reimbursement out of inheritances by such beneficiaries. See General Statutes (Rev. to 1985) § 17-83f. The obvious purpose of reducing the amount of the state's lien on such proceeds and, thereby, affording some of the recovery to the public assistance beneficiary, was to give an incentive to the beneficiary to prosecute his or her cause of action, thus benefiting the beneficiary and, possibly, the state as well, as described previously.

In 1985, however, by enacting No. 85-564 of the 1985 Public Acts, the legislature inserted the 50 percent rule into the provision regarding *inheritances* by public assistance beneficiaries as well, thereby providing that such beneficiaries could retain at least 50 percent of their inheritances, just as they could retain at least 50 percent of the proceeds of their causes of action. See General Statutes (Rev. to 1987) § 17-83f. The legislative debate on the bill supports the inference we have drawn from the structure and genealogy of the statutory scheme, namely, that the purpose of the 50 percent rule is to give an otherwise absent incentive to public assistance beneficiaries to take their inheritances, thus

benefiting both the beneficiaries and the state. See 28 S. Proc., Pt. 11, 1985 Sess., p. 3527, remarks of Senator Joseph C. Markley; 28 H.R. Proc., Pt. 31, 1985 Sess., pp. 11401–11402, remarks of Representative James T. Fleming.

This discussion leads us to conclude that, contrary to the defendant's contention, §§ 17b-93 and 17b-95 apply to the plaintiff's claim in this case, and that § 17b-94 (b) does not apply. The general rule of full reimbursement embodied in § 17b-93, as specifically applied to the estate of a deceased public assistance beneficiary under § 17b-95, governs the plaintiff's claim. We hold that the provisions of § 17b-94 (b) apply only to inheritances by living public assistance beneficiaries because they are the persons to whom the calculus of incentives contemplated by § 17b-94 (b) is aimed.[5]

Moreover, this does not, contrary to the suggestion of the defendant, disadvantage the estate of the decedent

---

[5] The same genealogical legislative history leads us to reject the defendant's reliance on the reference in § 17b-94 (b) to "sections . . . 17b-79 to 17b-103, inclusive . . . ." Although that "inclusive" reference does contain § 17b-94 (b), we cannot ascribe to it the significance that the defendant urges. That reference is part of a list of statutes that purports to refer to the statutory sections under which a public assistance beneficiary, who is entitled to the 50 percent rule of § 17b-94 (b), receives such assistance: "In the case of an inheritance of an estate by a beneficiary of aid under sections 17b-22, 17b-75 to 17b-77, inclusive, 17b-79 to 17b-103, inclusive, 17b-114, 17b-180 to 17b-183, inclusive, 17b-260 to 17b-262, inclusive, 17b-264 to 17b-285, inclusive, 17b-357 to 17b-362, inclusive, 17b-600 to 17b-604, inclusive, 17b-807 and 17b-808 . . . . " General Statutes § 17b-94 (b). This same list is found at the beginning of §§ 17b-94 (a), 17b-93 and 17b-95. See footnotes 2 through 4.

Prior to 1995, all of these statutory sections and subsections referred not to "a beneficiary of aid under" this list of statutes, but to "a beneficiary of aid *under this chapter*"; (emphasis added); which was chapter 302 of the General Statutes, entitled "Public Assistance." See the predecessor statutes to §§ 17b-93, 17b-94 and 17b-95, namely, General Statutes (Rev. to 1993) §§ 17-83e, 17-83f and 17-83g. We cannot conclude that when, in 1995, the phrase "under this chapter" was replaced by the list of statutory sections now contained in those three statutes, this replacement was intended to alter the entire statutory scheme, including the calculus of incentives to living

simply because she died before the plaintiff asserted its claim. Had the decedent, or someone acting on her behalf, taken advantage of the 50 percent rule of § 17b-94 (b) before her death, and thereby retained the balance of her inheritance, her estate would nonetheless have been liable to the plaintiff under the provisions of § 17b-95 for that balance, or at least any unspent portion thereof, because under that section the state would have had a claim for the amount of public assistance payments "for which the state has not been reimbursed . . . ." Also contrary to the defendant's argument, this discussion of the statutory scheme does not depend on whether the decedent's inheritance consisted of real estate, personal property, or both. Thus, the fact that, as a formal matter, title to the house in question vested in the decedent at the death of her son, subject to the payment of just claims; see *Pollard* v. *Zoning Board of Appeals*, 186 Conn. 32, 42, 438 A.2d 1186 (1982); *Brill* v. *Ulrey*, 159 Conn. 371, 375, 269 A.2d 262 (1970); is simply irrelevant.

The judgment is affirmed.

In this opinion the other justices concurred.

public assistance beneficiaries embodied in § 17b-94 (b). Indeed, insofar as we can tell, this replacement was accomplished not by specific legislation, but by the legislative commissioners' office as part of its routine statutory revising duties.