## S03A1365. WARD v. McFALL.
(593 SE2d 340)

HINES, Justice.

Christopher Ward appeals from an order declaring OCGA § 19-6-15 (b) unconstitutional. We reverse.

Ward and Laura McFall were divorced in Rockdale County in 1993. There are two children of the marriage, born in 1989 and 1990.

---

Ward has custody of the children. In 1999, a consent modification order was entered in Fulton County providing that McFall would pay 25 percent of her income ($375 a month) as child support, with a reduction for the summer months when the children lived with her. She was also to provide medical insurance for the children through her employer. In September 2002, McFall filed a complaint to modify child support and visitation, and in November 2002, moved for a declaration that the Georgia Child Support Guidelines ("guidelines") found in OCGA § 19-6-15 (b) are unconstitutional.

In a temporary order, the trial court applied the guidelines, determined that special circumstances existed, see OCGA § 19-6-15 (c), adjusted the child support award produced by the guidelines downward, and set McFall's obligation at $125 per month.[1] In the same order[2] the court addressed the constitutionality of the guidelines, found that OCGA § 19-6-15 (b) did not satisfy certain mandates of 45 CFR § 302.56, and declared OCGA § 19-6-15 invalid by virtue of the Supremacy Clause of the United States Constitution. U. S. Const., Art. VI. The trial court issued a certificate of immediate review and this Court granted Ward's application for interlocutory appeal. See OCGA § 5-6-34 (b).

Georgia participates in the federal Aid to Families with Dependent Children program, which provides benefits to certain needy families, under the Social Security Act. See 42 USCA § 601 et seq. As part of an interlocking set of initiatives and statutes, and in order to qualify for federal funds, Georgia's child support program must comport with requirements set forth in Title IV, Part D of the Social Security Act. See 42 USCA §§ 609 and 651-669b; *Blessing v. Freestone*, 520 U. S. 329, 333-335 (117 SC 1353, 137 LE2d 569) (1997); *Sullivan v. Stroop*, 496 U. S. 478 (110 SC 2499, 110 LE2d 438) (1990). Under 42 USCA § 667, as part of its "state plan," Georgia must establish guidelines for child support award amounts. These guidelines are found in OCGA § 19-6-15. The guidelines "shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts."[3] 42 USCA § 667 (a). Administrative interpretation of this congressional requirement has been codified at 45 CFR § 302.56. Subsection (h) of this regulation states:

> As part of the review of a State's guidelines . . . a State must consider economic data on the cost of raising children

---

[1] The trial court also addressed child support arrearage and visitation.

[2] The order was later amended.

[3] OCGA § 19-6-15 (d) provides for the establishment of a commission to review the guidelines. It is undisputed that the Commission last met in 2001.

and analyze case data, gathered through sampling or other methods, on the application of, and deviations from, the guidelines.

The trial court found that Georgia had completely failed to abide by 45 CFR § 302.56 (h), and therefore held the State's child support guidelines were invalid.[4]

1. We must first examine our jurisdiction. McFall contends that appellate jurisdiction of this case is properly in the Court of Appeals. She argues that the trial court did not declare OCGA § 19-6-15 unconstitutional, but only determined that the trial court would not apply this statute because Georgia was not in compliance with federal law. But that view of the trial court's action is too restricted. OCGA § 19-6-15 is a legislative enactment of the General Assembly and is the law of this State. See Ga. Const. of 1983, Art. III, Sec. I, Par. I; Art. III, Sec. VI, Par. I; Art. III, Sec. VI, Par. IV. If OCGA § 19-6-15 is in violation of the Constitution of the United States, it is the trial court's obligation to declare the statute void. Ga. Const. of 1983, Art. I, Sec. II, Par. V. The trial court explicitly found OCGA § 19-6-15 to be inconsistent with the federal regulation, and therefore, in violation of the Supremacy Clause of the Constitution of the United States. U. S. Const., Art. VI. The trial court's order cannot be construed to be anything other than a declaration that OCGA § 19-6-15 is unconstitutional under the Supremacy Clause. See *Hagans v. Lavine*, 415 U. S. 528, 533, n. 5 (94 SC 1372, 39 LE2d 577) (1974). Thus, appellate jurisdiction is properly in this Court. Ga. Const. of 1983, Art. VI, Sec. VI, Par. II.

2. When discussing whether a state statute may stand under the Supremacy Clause, the Supreme Court of the United States has declared:

> Pre-emption may be either expressed or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." [Cits.] Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is " 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' " [cit.], and conflict pre-emption, where "compliance with both federal and state regulations is a physical impossibility,"

---

[4] In *Ga. Dept. of Human Resources v. Sweat*, 276 Ga. 627 (580 SE2d 206) (2003), this Court addressed due process, equal protection, privacy, and takings challenges to the constitutionality of OCGA § 19-6-15.

[cit.], or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" [Cits.]

*Gade v. National Solid Waste Mgmt. Assn.*, 505 U. S. 88, 98 (112 SC 2374, 120 LE2d 73) (1992).

There is no congressional statement of pre-emption, nor is this an area in which Congress left no room for states to act; on the contrary, Congress clearly contemplated, even mandated, state enactment of guidelines. Similarly, there is no question of a conflict concerning compliance with both federal and state regulations; Congress did not set child support guidelines. Only state guidelines exist. Thus, the question of pre-emption in this instance revolves around the issue of whether the child support guidelines, and the method by which they are reviewed, are an obstacle to congressional goals.

There is a strong presumption *against* pre-emption in domestic relations matters, as it is traditionally an area of state regulation. *Egelhoff v. Egelhoff*, 532 U. S. 141, 156-157 (121 SC 1322, 149 LE2d 264) (2001). The United States Supreme Court has stated:

> We have consistently recognized that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." [Cits.] "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted." [Cits.] Before a state law governing domestic relations will be overridden, it "must do 'major damage' to 'clear and substantial' federal interests." [Cits.]

*Rose v. Rose*, 481 U. S. 619, 625 (107 SC 2029, 95 LE2d 599) (1987).

Here, the federal interest is in obtaining child support orders to enforce the obligations of non-custodial parents. See 42 USCA § 651. If Georgia has not reviewed[5] its guidelines in the exact manner stated in 45 CFR § 302.56 (h), it does not "do major damage" to that federal interest. As the trial court found, Georgia's Commission on Child Support has prepared reports which conclude that the guidelines produce appropriate child support amounts, as Congress required in 42 USCA § 667 (a). The question of whether the Commission's conclusion is inadequate is presented by the associated admin-

---

[5] It is undisputed that Georgia's Commission on Child Support has prepared reviews in order to satisfy the statute and regulation.

istrative regulation, 45 CFR § 302.56 (h).

But this regulation is not the only administrative decision involved. The guidelines review requirement of 42 USCA § 667 is found in Part D, Subchapter IV of the Social Security Code. Under 42 USCA § 609 (a) (8), the United States Secretary of Health and Human Services is to reduce a state's grant if the state is not in compliance with Part D, but the Secretary has the discretion to judge whether a state has "substantially compl[ied]" with Part D, and to disregard technical noncompliance with it. It is undisputed that the Secretary has approved and certified Georgia's plan and amendments under 42 USCA §§ 602 and 652 (a) (3), and has taken no action to reduce Georgia's grant. In such circumstances, courts typically defer to the "'executive department's construction of a statutory scheme it is entrusted to administer.' [Cit.]" *Japan Whaling Assn. v. American Cetacean Society*, 478 U. S. 221, 233 (106 SC 2860, 92 LE2d 166) (1986). As the responsible federal executive agency has determined that Georgia's guidelines are in conformity with the federal statutory scheme, we will defer to that determination.

Accordingly, we find that the guidelines do not frustrate the stated congressional purpose, and that the statute is not unconstitutional under the Supremacy Clause.

*Judgment reversed. Fletcher, C. J., Sears, P. J., Benham, Carley, and Thompson, JJ., and Judge Stephanie Brodie Manis concur. Hunstein, J., disqualified.*

DECIDED MARCH 1, 2004 —
RECONSIDERATION DENIED MARCH 19, 2004.

*Schlueter, Buck & Childers, Brett A. Schroyer*, for appellant.
*Daryl G. Lecroy*, for appellee.