S04A0866. RICHARDS et al. v. GEORGIA DEPARTMENT OF
COMMUNITY HEALTH.
(604 SE2d 815)

HINES, Justice.

J.J. Richards, Marcus McCarty, and others similarly situated, are recipients of benefits under Medicaid, a cooperative federal and state program for medical assistance to persons of lower incomes. The injuries that caused the need for their benefits arose from the tortious conduct of others. In a class action suit, Richards and McCarty mount a statutory and constitutional challenge to the application of OCGA § 49-4-149, which provides a mechanism for the State to recoup money spent on Medicaid benefits. The trial court granted partial summary judgment to the defendant, Georgia Department of Community Health ("GDCH"), the state agency which administers Medicaid. The class action plaintiffs appeal, and for the reasons that follow, we affirm.

Under Medicaid, financial assistance is provided by GDCH to those persons who need medical care and who meet certain financial eligibility requirements. See 42 USCA § 1396 et seq.; OCGA § 49-4-140 et seq. When the injuries necessitating the medical care are caused by a third-party tortfeasor, GDCH takes certain steps to recover the value of the medical assistance it funds. In Richards's case, GDCH paid $24,947.13 for medical services on his behalf, and Richards sought recovery from the tortfeasor. GDCH filed a lien against the recovery for $24,947.13, notifying Richards's attorney. GDCH and Richards's attorney entered into a negotiated settlement.[1] Out of the total award Richards received, the attorney lien for Richards's attorney was satisfied first, and GDCH used a "negotiation matrix" to determine how much of the remaining money GDCH would receive. GDCH accepted $21,205.06 to satisfy its lien for $24,947.13, and to ensure that Richards received at least 20 percent

---

[1] GDCH uses an agent in this process, PCG Consulting, Inc.

of the award, consistent with GDCH policy. In McCarty's case, GDCH made payments of $14,070.98 to medical providers and filed a lien; McCarty has yet to receive a settlement award or judgment and there has not yet been any reimbursement to GDCH for the medical assistance. In this case, Class A represents those whose tort recoveries have been used to reimburse GDCH, and Class B consists of those where no reimbursement has yet occurred (collectively, "Richards").

1. Under 42 USCA § 1396k (a) (1) (A), a state's Medicaid plan must require a recipient to assign "any rights . . . to payment for medical care from any third party." The federal Code also requires:

> that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.

42 USCA § 1396a (a) (25) (H).

Thus, Georgia has an obligation to effect recovery of Medicaid payments made when third-party tortfeasors are responsible for a Medicaid recipient's injuries. Georgia satisfies this obligation largely through mechanisms set forth in OCGA § 49-4-149. In pertinent part, OCGA § 49-4-149 reads:

> (a) The Department of Community Health shall have a lien for the charges for medical care and treatment provided a medical assistance recipient upon any moneys or other property accruing to the recipient to whom such care was furnished or to his legal representatives as a result of sickness, injury, disease, disability, or death, due to the liability of a third party, which necessitated the medical care. . . .
>
> (d) A recipient of medical assistance who receives medical care for which the department may be obligated to pay shall be deemed to have made assignment to the department of any rights of such person to any payments for such medical care from a third party, up to the amount of medical assistance actually paid by the department; provided, however, assignment does not attach to a recipient's right to any payments provided under private health care coverage prior

to the receipt of written notice, by the carrier who issued the health care coverage, of the exercise by the department of its assignment. This subsection shall apply to a recipient only if notice of this subsection is given to the recipient at the time his application for medical assistance is filed. The assignment created by this subsection shall be effective until the recipient of medical assistance is no longer an eligible recipient for medical assistance.

Richards's contention that GDCH's application of OCGA § 49-4-149 is infirm relies in part upon reading the assignment provision of OCGA § 49-4-149 (d) as limiting the assignment to only that portion of a tort recovery specifically denominated as a recovery for medical expense. GDCH's practice under OCGA § 49-4-149 is to assert a lien on *all* the proceeds of a tort recovery. This practice is consistent with federal law, and the reading of OCGA § 49-4-149 that Richards advances is incorrect.

OCGA § 49-4-149 is intended to satisfy the requirements of the federal Medicaid statutes. See OCGA §§ 49-4-141 (8); 49-4-142. The federal statutes require that, when reasonable, states recoup the value of Medicaid benefits from any third-party tortfeasor who may be liable for a recipient's injuries that necessitated the state aid, and that an assignment of a recipient's recovery be part of the recoupment mechanism. See 42 USCA §§ 1396a (a) (25) (H); 1396k (a) (1) (A), supra. "The Medicaid statute is intended to vest States with the right to recover the full payment of medical expenses by a third party liable for causing the injuries which triggered the need for medical care." *Ahlborn v. Arkansas Dept. of Human Svcs.*, 280 FSupp.2d 881, 888 (E.D. Ark. 2003). "It is a well-established principle that a statute must be viewed so as to make all its parts harmonize and to give a sensible and intelligent effect to each part. It is not presumed that the legislature intended that any part would be without meaning." *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115) (1975). Accordingly, Richards's reading of OCGA § 49-4-149 (d) as creating an assignment *only* of recovery funds that are specifically denominated as being reimbursement for medical expenses is too narrow. The lien created by OCGA § 49-4-149 (a) is on "any moneys or other property" recovered in a tort action. This must be read as creating a lien on *any* funds recovered in a tort action. Only this reading is consistent with the federal legislative intent that a state fully recover the value of medical care it purchased for a Medicaid recipient when a tortfeasor is responsible for the need for that medical care.

To adopt Richards's preferred reading would allow a Medicaid recipient to negotiate a tort settlement structured in such a way so as

to reflect no, or minimal, compensation for medical expenses, or to convince a jury to create such structures, and thereby gain a recovery that does not require any significant compensation to the taxpayers who funded his medical care. This would be blatantly unfair to those taxpayers, and is contrary to the intent of the federal statutes. Accordingly, under Georgia's statutes, GDCH's lien is applied to all of the funds in a tort recovery such as Richards's, and there is no conflict between the imposition of such a lien and the federal Medicaid statutes. Id.[2]

2. Richards also contends that GDCH's imposition of a lien violates 42 USCA § 1396p (a) (1), which states: "No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan. . . ."

Again, such a provision cannot be read in a vacuum; in construing the meaning of 42 USCA § 1396p (a) (1), we must look to the whole Medicaid statute and its object. See *Stafford v. Briggs*, 444 U. S. 527, 535 (100 SC 774, 63 LE2d 1) (1980). The narrow reading of 42 USCA § 1396p (a) (1) that Richards advances is incorrect. State recoupment of medical expenses paid is not only permitted by the Medicaid statutes, but mandated. 42 USCA §§ 1396a (a) (25) (H); 1396k (a) (1) (A). As previously noted, OCGA § 49-4-149 (a) specifically creates a lien on "any moneys or other property" recovered in a tort action, which is consistent with the federal mandate. As state recoupment of medical expenses is required by federal statutes, 42 USCA § 1396p (a) (1)'s provision against imposing a lien against "the property of any individual" is clearly not intended to preclude a lien against a recipient's tort recovery. Simply put, there is no property of the recipient involved. The statutory assignment occurs when a Medicaid recipient receives medical care. OCGA § 49-4-149 (d). Thus, prior to receiving any proceeds from a later tort recovery, the recipient has already assigned GDCH his interest in that recovery to the extent of "medical assistance actually paid." Id. Accordingly, tort recovery payments up to that amount are not the property of the recipient when the lien is enforced; the ownership of that property has already been transferred to GDCH.

In a related argument, relying upon *Allianz Life Ins. Co. of North America v. Riedl*, 264 Ga. 395, 397 (444 SE2d 736) (1994), Richards contends that the assignment vested GDCH with the sole power to seek reimbursement for medical expenses, and divested him of any

---

[2] This conclusion is consistent with the interpretation of a majority of states that have examined the question, and with the interpretation of the federal agency charged with administering Medicaid and with reviewing state plans. *Ahlborn*, supra at 887. See *Ward v. McFall*, 277 Ga. 649, 653 (2) (593 SE2d 340) (2004).

power to seek recovery for those expenses. Thus, he asserts, the lien is based upon a recovery which, as a matter of law, he has no power to collect, but is nonetheless applied to that remainder of the tort action which he has the power to collect. But, as this Court specifically noted in *Allianz Life*, an assignor can sue with the consent of the assignee. Id. at 398. That is what has occurred in Richards's case, and in similar cases; recipients have the power to pursue claims against tortfeasors for all injuries, including medical expenses.

3. Under 42 USCA § 1396a (a) (25) (B), Georgia's Medicaid plan must provide that when

> legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability[.]

Richards contends that this provision requires GDCH to pay a part of the cost of collecting reimbursement from tortfeasors, such as legal fees, even if the recipient prosecutes a claim without any participation by GDCH. But, there is no such requirement in 42 USCA § 1396a (a) (25) (B). Rather, it clarifies that GDCH *need not* seek reimbursement when to do so would be an unwise use of public funds. And in any event, what is cost-effective for GDCH and what is cost-effective for a Medicaid recipient are two entirely different things. The only claim GDCH has is for medical expenses; the injured recipient, of course, has additional damages that may be recoverable, such as pain and suffering and lost wages. By seeking recovery for medical expenses together, with other damages, the recipient increases the efficiency of the recovery of the public funds expended on his behalf.

4. Finally, Richards asserts that GDCH's application of OCGA § 49-4-149 is a taking of private property for public use without just compensation and due process of law, contrary to the Fifth Amendment to the Constitution of the United States. See also Ga. Const. of 1983, Art. I, Sec. I, Par. I, and Art. I, Sec. III, Par. I. However, as noted above, when a recipient obtains a tort recovery, the assignment in favor of GDCH has already been made, and thus property of the recipient to that extent is not taken. See Division 2, supra.

Nonetheless, Richards focuses upon the performance of legal services by his attorney, and contends that, without compensation, GDCH takes those services from Richards, noting that legal services are compensable property, citing *Weiner v. Fulton County*, 113 Ga. App. 343, 350 (148 SE2d 143) (1966). But, this simply misses the mark. *Weiner* dealt with the question of whether an attorney can be

forced to represent a client without compensation. Here, there is no question of any attorney performing services without compensation; although neither Richards nor McCarty has placed into the record his contract with his attorney for legal services, discussion at the hearing below indicates that attorneys in cases such as this work on a contingency fee basis, and that when a recovery is had, collect the percentage of that recovery agreed upon.[3]

Richards urges that he is compelled to purchase legal services for GDCH to effect its recovery of medical expenses. However, such is not the case. Recipients are under no compulsion to undertake a recovery, and if they do so, it is with knowledge of the assignment. The existence of GDCH's lien is simply a factor to be considered when a recipient determines whether it is economically feasible to pursue a tort recovery.

Further, even assuming that Richards has some property interest remaining in the funds collected by GDCH, that collection is not done without just compensation. To the contrary, when GDCH obtains the funds, the Medicaid recipient has already received the full benefit of that which GDCH now receives. In Richards's case, $24,947.13 has been expended on his behalf for his medical care,[4] an amount actually more than the $21,205.06 GDCH accepted in satisfaction of the lien. Nor is there any question about this "taking" being done without due process of law; when he applied for Medicaid benefits, Richards was notified of this procedure,[5] and has waived any due process rights he might have by accepting the assistance. See *Greene v. Hundley*, 266 Ga. 592, 595 (2) (468 SE2d 350) (1996). What Richards would have this Court ignore is that he has already benefitted from the Medicaid program and that significant public funds have been expended on his behalf for his medical care. He has not had to pay anything to receive this benefit, nor is he obligated to do so. However, the relevant statutes set as a condition of receiving that assistance that if he gains a recovery stemming from his injuries, GDCH will have a lien to recover the value of the public funds expended on his behalf.

*Judgment affirmed. All the Justices concur.*

---

[3] By statute, GDCH's "negotiation matrix" must take into account an attorney's lien before determining how much of the recovery GDCH may gain; essentially, attorneys are paid first. See OCGA § 49-4-149 (b).

[4] Similarly, McCarty has received $14,070.98 worth of medical services from public funding.

[5] No question is presented in this case of any failure of GDCH to perfect its assignment by failing to properly notify recipients. See OCGA § 49-4-149 (d).

Medicaid benefits; constitutional question. Fulton Superior Court. Before Judge Barnes.

*Warshauer, Thomas, Thornton & Rogers, Michael J. Warshauer, Grist & Brock, Joel M. Grist, Jr.,* for appellants.

*Thurbert E. Baker, Attorney General, Laura W. Hyman, Assistant Attorney General,* for appellee.

*David A. Webster,* amicus curiae.