# STATE OF CONNECTICUT *v.* JAMES PETERS ET AL.
## (SC 17855)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Schaller, Js.

Argued November 19, 2007—officially released May 27, 2008

*Roger Lee Crossland*, for the appellants (defendants).

*Gary G. Williams*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Robert A. Nagy*, assistant attorney general, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. This appeal arises from a challenge to the amount of a lien for medicaid benefits that was asserted by the plaintiff, the state of Connecticut, against an arbitration award received by an accident victim from a third party tortfeasor. Specifically, we are asked to consider whether the state can choose to collect reimbursement from the medicaid recipient under federal medicaid law instead of pursuing the third party tortfeasor directly, and, if so, whether the amount of reimbursement must be reduced pro rata to compensate the recipient for the attorney's fees and costs he expended in obtaining the recovery in which the state ultimately shares. The defendants[1] appeal from the trial court's granting of the state's motion for summary judg-

---

[1] The defendants are: James Peters, the accident victim and medicaid recipient; Daniel Shepro, Peters' counsel in the arbitration proceedings that resulted in his recovery of damages from the third party tortfeasor; and Shepro and Blake, LLC, Shepro's law firm. Shepro and his firm currently hold the arbitration award funds in escrow.

ment on its interpleader action.[2] We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The named defendant, James Peters, was seriously injured in a motorcycle accident in 1997. Having incurred $280,000 in medical bills, Peters received $62,890.72 in medicaid assistance and $7700 in cash assistance from the state department of social services.[3] Thereafter, Peters pursued damages from the tortfeasor and ultimately obtained an arbitration award in the amount of $747,500, which was reduced to $526,298.33 after attorney's fees and costs were deducted. The state department of administrative services, which is responsible for the billing and collection of any money due to the state in public assistance cases; see *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 439 n.5, 870 A.2d 448 (2005); then asserted a lien in the amount of $70,590.72 against the arbitration award pursuant to General Statutes §§ 17b-93 and 17b-94 in

---

[2] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The state brought the interpleader action pursuant to General Statutes § 52-484, which provides: "Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case, may tax costs at its discretion and, under the rules applicable to an action of interpleader, may allow to one or more of the parties a reasonable sum or sums for counsel fees and disbursements, payable out of such fund or property; but no such allowance shall be made unless it has been claimed by the party in his complaint or answer." See also 2 E. Stephenson, Connecticut Civil Procedure (3d Ed. 2002) § 225 (overview of purpose and history of interpleader actions).

[3] The department of social services is the state agency responsible for administering the federal medicaid program. See General Statutes §§ 17b-2 (8) and 17b-262.

order to obtain reimbursement of the public assistance funds that it had paid to Peters.[4] On June 17, 2005, the state brought an interpleader action against the defendants, seeking a determination of rights to the full amount of the lien. The defendants counterclaimed, asserting that the federal medicaid statutes require that the amount of the lien be reduced pro rata by one third to account for the attorney's fees and costs incurred by Peters in pursuing the arbitration award from the tortfeasor.[5] The parties then filed cross motions for summary judgment. The trial court, *Hon. Robert J. Hale,*

---

[4] General Statutes § 17b-93 (a) provides in relevant part: "If a beneficiary of aid under the state . . . medical assistance program . . . has or acquires property of any kind or interest in any property, estate or claim of any kind . . . the state of Connecticut shall have a claim . . . which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid, subject to the provisions of section 17b-94, to him or in his behalf under said programs . . . ."

General Statutes § 17b-94 (a) provides in relevant part: "In the case of causes of action of beneficiaries of aid under the state . . . medical assistance program . . . the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received by such beneficiary . . . after payment of all expenses connected with the cause of action, whichever is less, for repayment under said section 17b-93, and shall have priority over all other claims except attorney's fees for said causes, expenses of suit, costs of hospitalization connected with the cause of action by whomever paid over and above hospital insurance or other such benefits, and, for such period of hospitalization as was not paid for by the state, physicians' fees for services during any such period as are connected with the cause of action over and above medical insurance or other such benefits; and such claim shall consist of the total assistance repayment for which claim may be made under said programs. The proceeds of such causes of action shall be assignable to the state for payment of the amount due under said section 17b-93, irrespective of any other provision of law. . . ."

Although §§ 17b-93 and 17b-94 have been amended since 1998 when the state asserted the lien at issue, the changes are not relevant to this appeal. For purposes of this opinion, references herein to §§ 17b-93 and 17b-94 are to the current revision of the statute.

[5] Specifically, the defendants' counterclaim sought a declaratory judgment that the state could not recover the full amount of the lien without a pro rata reduction because recovery of the full amount would constitute a violation of the supremacy clause of the federal constitution.

judge trial referee, granted the state's motion for summary judgment on October 17, 2006, and adopted the holding of the trial court, *Dunnell, J.*, in a related proceeding that presented the same issues as this appeal. *Peters* v. *Dept. of Social Services*, supra, 434. In that proceeding, Peters had challenged the amount of the lien at a hearing before the department of social services, which had ruled that the state could recover the full amount of the lien. Peters then filed an administrative appeal with the Superior Court under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. In dismissing that appeal, the trial court concluded that the department of social services was entitled to recover the full amount of the lien because neither federal nor state law required the department to pursue third parties directly for reimbursement of medicaid funds, or, alternatively, to accept a lesser reimbursement by a pro rata share of attorney's fees and costs from the recipient's recovery against a third party tortfeasor.[6] *Peters* v. *Dept. of Social Services*, supra, 440. In *Peters*, this court reversed the trial court's judgment for lack of subject matter jurisdiction.[7] Id., 447–48. The state then filed the current interpleader action, and the defendants thereafter appealed from the summary judgment rendered in favor of the state.

On appeal, the defendants argue that the trial court improperly concluded that federal law does not require

[6] Judge Dunnell also rejected Peters' claim that the interim amount of the lien, which had been quoted to him by the department of administrative services, had been increased improperly when the final amount of the lien was determined at trial, because she concluded that Peters had understood that the interim amount of the lien was not a final figure. The defendants raise this claim again in this appeal, but, for reasons set forth later in this opinion, we decline to reach it. See footnote 22 of this opinion.

[7] Specifically, we concluded that the administrative appeal was not authorized under UAPA because it was not an appeal from a " '[c]ontested case' " as defined by § 4-166 (2). *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 447.

the state to pursue third parties directly for the reimbursement of medicaid funds. Alternatively, the defendants argue that the trial court improperly held that, if the state chooses to collect reimbursement from the medicaid recipient instead of pursuing the tortfeasor directly, the state is not obligated to reduce the amount of its reimbursement pro rata to compensate the recipient for his attorney's fees and costs. We disagree.

We undertake our analysis beginning with the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007). The defendants' claim challenging the trial court's interpretation of federal and state statutes is also subject to plenary review. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language

does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Citations omitted; internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007).

Our interpretation of federal and state statutes is guided by the plain meaning rule. See, e.g., *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 400–401, 941 A.2d 868 (2008) ("With respect to the construction and application of federal statutes, principles of comity and consistency require us to follow the plain meaning rule for the interpretation of federal statutes because that is the rule of construction utilized by the United States Court of Appeals for the Second Circuit. . . . If the meaning of the text is not plain, however, we must look to the statute as a whole and construct an interpretation that comports with its primary purpose and does not lead to anomalous or unreasonable results." [Citation omitted; internal quotation marks omitted.]); *Alvord Investment, LLC* v. *Zoning Board of Appeals*, supra, 282 Conn. 402 ("In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." [Internal quotation marks omitted.]). We conclude that the federal medicaid statutes reasonably cannot be categorized as plain and unambiguous; see, e.g., *Ahern* v. *Thomas*, 248 Conn. 708, 720, 733

A.2d 756 (1999);[8] and, therefore, our determination of whether the statutes require the state to pursue the third party tortfeasor directly for reimbursement, or, alternatively, require the state to compensate the recipient pro rata for attorney's fees and costs, will encompass the text of the relevant medicaid statutes as well as their broader context and purpose.

We therefore begin with the language of the federal statutes that govern the medicaid assistance program.[9] The federal medicaid statutes place a priority on state reimbursement of medicaid funds and require that participating states have a recovery policy to effectuate such reimbursement. For states that elect to participate in the medicaid program,[10] title 42 of the United States

[8] Far from being plain and unambiguous, the federal medicaid provisions comprise "a statutory scheme that is among the most intricate ever drafted by Congress." (Internal quotation marks omitted.) *Ahern* v. *Thomas*, supra, 248 Conn. 720. The hyperbole used to describe the federal medicaid statutes illustrates the difficulty this court now encounters by "wad[ing] once again into the virtually impenetrable 'Serbonian bog' of federal and state laws governing the medicaid system." *Ross* v. *Giardi*, 237 Conn. 550, 554, 680 A.2d 113 (1996); *Friedman* v. *Berger*, 547 F.2d 724, 727 n.7 (2d Cir. 1976) (relevant statutory scheme has also been described, by Judge Henry J. Friendly, as "almost unintelligible to the uninitiated"), cert. denied, 430 U.S. 984, 97 S. Ct. 1681, 52 L. Ed. 2d 378 (1977); *Friedman* v. *Berger*, 409 F. Sup. 1225, 1226 (S.D.N.Y. 1976) (medicaid scheme is "aggravated assault on the English language, resistant to attempts to understand it").

[9] Medicaid "is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of [medical care] . . . . The federal government shares the costs of medicaid with those states that elect to participate in the program, and, in return, the states are required to comply with requirements imposed by the medicaid act and by the secretary of the Department of Health and Human Services. . . . Specifically, participating states are required to develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance to be provided. . . . [S]ee . . . 42 U.S.C. § 1396a (a) (17)." (Internal quotation marks omitted.) *Skindzier* v. *Commissioner of Social Services*, 258 Conn. 642, 648, 784 A.2d 323 (2001); see also 42 U.S.C. § 1396 et seq.; 42 C.F.R. § 430.0; *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, 547 U.S. 268, 275–76, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006).

[10] "States are not required to participate in [m]edicaid, but all of them do." *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, 547 U.S. 268, 275, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006).

Code, § 1396a (a) (25) (A), mandates that the state's plan for medical assistance must "provide . . . that the [s]tate or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties[11] . . . to pay for care and services available under the plan . . . ." Moreover, "in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the [s]tate can reasonably expect to recover exceeds the costs of such recovery, the [s]tate or local agency *will seek reimbursement* for such assistance to the extent of such legal liability . . . ." (Emphasis added.) 42 U.S.C. § 1396a (a) (25) (B). To facilitate reimbursement, participating states also are required to adopt "laws under which, to the extent that payment has been made under the [s]tate plan for medical assistance for health care items or services furnished to an individual, the [s]tate is considered to have acquired the rights of such individual to payment by any other party for such health care items or services . . . ." 42 U.S.C. § 1396a (a) (25) (H). Furthermore, in seeking reimbursement, title 42 of the United States Code, § 1396k (a), sets forth conditions that a state medicaid participation plan must meet, which include the requirement that medicaid recipients must assign to the state any rights they may have to payment of medical care from third parties: "For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the [s]tate plan approved under this subchapter, a [s]tate plan for medical assistance shall . . . (1) provide that, as a condition of eligibility for medical assistance under the [s]tate plan to an individual . . . the individual is required . . . (A) to assign the [s]tate any rights, of the

---

[11] A third party is defined as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a [s]tate plan." 42 C.F.R. § 433.136 (2007).

individual . . . to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party; (B) to cooperate with the [s]tate . . . in obtaining support and payments (described in subparagraph [A]) for himself . . . and (C) to cooperate with the [s]tate in identifying, and providing information to assist the [s]tate in pursuing, any third party who may be liable to pay for care and services available under the plan . . . ."[12] Section 1396k further provides: "Such part of any amount collected by the [s]tate under an assignment made under the provisions of this section shall be retained by the [s]tate as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the [f]ederal [g]overnment to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual." 42 U.S.C. § 1396k (b); see also 42 C.F.R. §§ 433.145 and 433.146.

The state of Connecticut has elected to participate in the medicaid program, and, therefore, is obligated to comply with federal requirements. See General Statutes §§ 17b-2 (8) and 17b-260;[13] see also *Arkansas Dept. of*

---

[12] The Medicare and Medicaid Budget Reconciliation Amendments of 1984 made the assignment of rights of payment to the state by medicaid recipients mandatory instead of permissive. At the time of the amendment, and under the old permissive scheme, only twenty-five states had adopted the requirement that medicaid applicants assign to the state their rights to third party payment of medical care. See H.R. Conf. Rep. No. 98-861, 98th Cong., 2d Sess. 757, 1368–69 (1984), reprinted in 1984 U.S.C.C.A.N. 1455, 2056–57. By making the assignment of rights mandatory, Congress emphasized the importance of reimbursement of medicaid funds to the state and federal governments.

[13] General Statutes § 17b-2 provides in relevant part: "The Department of Social Services is designated as the state agency for the administration of . . . (8) the [m]edicaid program pursuant to Title XIX of the Social Security Act . . . ."

General Statutes § 17b-260 provides in relevant part: "The Commissioner of Social Services is authorized to take advantage of the medical assistance

*Health & Human Services* v. *Ahlborn*, 547 U.S. 268, 275–78, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006); *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 37, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981). Accordingly, the legislature has adopted a statutory scheme that provides three ways for the state to seek reimbursement of medicaid funds paid to recipients, namely, by an assignment of rights, a right of subrogation and a lien. General Statutes (Sup. 2008) § 17b-265 requires that medicaid recipients in Connecticut, as a condition of eligibility, assign to the state the right to reimbursement from third parties for medical expenses.[14] Under § 17b-265, the department of social services is subrogated to any right of recovery that a recipient has against a third party for reimbursement. Sections 17b-93 and 17b-94 provide that the state may assert a lien to effectuate the state's reimbursement of medicaid funds. Thus, to obtain reimbursement when a third party is liable for a recipient's medical expenses that the state has paid, the state may pursue those claims against the third party directly pursuant to the assignment and subrogation scheme or, alternatively, indirectly by placing a lien on personal

programs provided in Title XIX, entitled 'Grants to States for Medical Assistance Programs', contained in the Social Security Amendments of 1965 and may administer the same in accordance with the requirements provided therein . . . ."

[14] General Statutes (Sup. 2008) § 17b-265 provides in relevant part: "(a) In accordance with 42 U.S.C. 1396k, the Department of Social Services shall be subrogated to any right of recovery or indemnification that an applicant or recipient of medical assistance or any legally liable relative of such applicant or recipient has against an insurer or other legally liable third party . . . for the cost of all health care items or services furnished to the applicant or recipient . . . .

"(b) An applicant or recipient . . . shall be deemed to have made a subrogation assignment and an assignment of claim for benefits to the department [of social services]. The department shall inform an applicant of such assignments at the time of application. . . ."

Although § 17b-265 has been amended since 1998, when the state asserted the lien at issue; Public Acts 1999, No. 99-279, § 17; Public Acts, Spec. Sess., June, 2007, No. 07-02, § 20; those changes are not relevant to this appeal. We therefore refer to the current revision of the statute.

injury judgments or settlements obtained by a medicaid recipient from a liable third party. Cf. *Calvanese* v. *Calvanese*, 93 N.Y.2d 111, 117, 710 N.E.2d 1079, 688 N.Y.S.2d 479 (1999) (describing New York's similar statutory scheme), overruled on other grounds by *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 268, as stated in *In re Zyprexa Products Liability Litigation*, 451 F. Sup. 2d 458 (E.D.N.Y. 2006).

The federal statutes illustrate that Congress has mandated that medicaid be a "payer of last resort"; (internal quotation marks omitted) *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 291;[15] and that the state is required to seek reimbursement of medicaid funds.[16] The language of the relevant federal medicaid statutes, however, does not dictate the method that states must employ to effectuate that goal. The defendants' position would require us to read language into the medicaid statutes that simply does not exist, namely, that the state will seek reimbursement *directly from a liable third party, or if the state chooses to pursue reimbursement indirectly through a lien on*

---

[15] See also S. Rep. No. 99-146, 99th Cong., 2d Sess. 312 (1986), reprinted in 1986 U.S.C.C.A.N. 42, 279 ("[m]edicaid is intended to be the payer of last resort, that is, other available resources must be used before [m]edicaid pays for the care of an individual enrolled in the [m]edicaid program").

[16] The defendants place undue significance on the amendments to § 1396p (b) (1) of title 42 of the United States Code that were passed as part of the Omnibus Budgetary Reconciliation Act of 1993, Pub. L. No. 103-66, 107 Stat. 312 (1993). The defendants argue that § 1396p (b) (1), which now provides in relevant part that "the [s]tate shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the [s]tate plan," changed the federal medicaid requirements so that §§ 17-93 and 17-94 should have been amended to accommodate medicaid's new "recovery emphasis." We conclude, however, that § 1396p (b) (1) is inapplicable to this appeal because it pertains to estate recovery. See 42 U.S.C. § 1396p (b) (1) (A) through (C). Moreover, we conclude that, since its inception, the medicaid program has required the state to seek reimbursement of medicaid funds when a third party is found to be liable for a recipient's medical expenses, and the 1993 amendments did not alter the state's obligation to do so.

*judgment or settlement proceeds obtained by a recipi-*
*ent, the state must compensate the recipient pro rata*
*for the attorney's fees and costs incurred by him in*
*pursuing the third party.* We decline to do so because
the legislative history of the relevant medicaid statutes
does not support that interpretation.

Significantly, Congress envisioned that third parties
would be legally liable for a recipient's injuries and
clearly intended that states should obtain reimburse-
ment in that case. The Senate Report that accompanied
the Social Security Amendments of 1967 stated that
when "people need medical care because of an accident
or illness for which someone else has fiscal liability;
for example, a . . . party who is determined by a court
to have legal liability," § 1396a (a) (25) (A) through (C),
was intended "to make certain that the [s]tate and the
[f]ederal [g]overnments will receive proper reimburse-
ment for medical assistance paid to an eligible person
when such third-party liability exists . . . ." S. Rep.
No. 744, 90th Cong., 1st Sess. 165 (1967), reprinted in
1967 U.S.C.C.A.N. 2834, 3022. Our review of the legisla-
tive history for the relevant medicaid statutes reveals
only one oblique reference to what method states
should use in pursuing reimbursement when a third
party is found to be liable for a recipient's medical
expenses. In the same Senate Report, the Finance Com-
mittee stated that "if medical assistance is granted and
legal liability of a third party is established later, the
[s]tate or local agency must seek reimbursement *from*
*such party.*" (Emphasis added.) S. Rep. No. 744, 90th
Cong., 1st Sess. 165 (1967), reprinted in 1967 U.S.C.-
C.A.N. 2834, 3022. This language clearly permits states
to pursue reimbursement directly from a third party,
but it does not logically follow, from its silence, that it
precludes states from seeking reimbursement by other
methods or requires that the state deduct attorney's
fees pro rata in seeking reimbursement indirectly from

the recipient. Instead, we read this language to require that the state must obtain reimbursement from a liable third party, regardless of method, and must do so directly from a third party unless a beneficiary already has collected from that party because the state must collect reimbursement *in some manner*. We do not attribute more significance to this language than it warrants, particularly because there is no support in the statutes' text for limiting the state's reimbursement only to recovery from third parties directly.[17] Moreover, not only is there no other reference to the method by which states should seek such reimbursement in any of the legislative history, but, also, there is no support in the legislative history whatsoever for the defendants' argument that states seeking reimbursement indirectly should compensate the recipient for attorney's fees and costs.[18] Finally, the defendants have provided no author-

---

[17] See *Rhode Island* v. *Narragansett Tribe of Indians*, 816 F. Sup. 796, 803 (D.R.I. 1993) ("In the case at hand, [the] petitioners are asking this court to interpret the Senate [R]eport as carrying the force of law where there is no textual support for their position. Even if I thought it was proper to accord such weight to the Senate report, which I do not, I find the key language inconclusive."), aff'd as modified, 19 F.3d 685 (1st Cir.), cert. denied, 513 U.S. 919, 115 S. Ct. 298, 130 L. Ed. 2d 211 (1994); *New York* v. *United States Dept. of Transportation*, 700 F. Sup. 1294, 1304 (S.D.N.Y. 1988) ("Two ambiguous sentences in the Senate Report do not support the heavy weight placed on them by [the state] to vary the plain language of the statute. [The state's] attempt to enforce these sentences as if they were part of the statutory text, and to ignore the plain language of [the statute] is not persuasive.").

[18] Moreover, we do not view a federal Senate Report as an exact and complete reflection of congressional intent. See *United States* v. *Lipscomb*, 299 F.3d 303, 326 (5th Cir. 2002) ("The Senate [R]eport on the crime bill, printed in 1983, can be taken as an authoritative statement of the Senate Judiciary Committee's intent for what became [the statute]. It is tenuous at best, however, to rely . . . solely on one committee report—on a wholly separate bill—as stating the views of the entire Congress."); *Abourezk* v. *Reagan*, 785 F.2d 1043, 1055 n.11 (D.C. Cir. 1986) ("Committee reports, we remind, do not embody the law. Congress, as [then] Judge Scalia recently noted, votes on the statutory words, not on different expressions packaged in committee reports."), superseded by statute on other grounds as stated in *In re Ruiz-Massieu*, 22 I. & N. Dec. 833 (BIA 1999).

ity, from the legislative history or elsewhere, that requires us to adopt the methodology that they seek.[19]

We conclude, therefore, that the state has met its federal obligation to seek reimbursement of medicaid

[19] In fact, the United States Supreme Court has indicated that states may pursue medicaid reimbursement indirectly by asserting a lien on a recipient's recovery from a liable third party. In *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 272–74, a medicaid recipient obtained a tort settlement from a third party and the Arkansas department of health and human services asserted a lien against the settlement proceeds for reimbursement of medicaid funds it had paid to that recipient. The lien was not reduced pro rata to compensate the recipient for attorney's fees and costs. Although whether a state may pursue reimbursement indirectly through a lien and, if so, whether that lien must be reduced pro rata, was not at issue in *Ahlborn*, the court, in holding that a state may assert a lien only on the settlement amount that represents medical expenses; id., 275; indicated that a state may pursue reimbursement indirectly through a lien.

Our research also reveals that, like Connecticut, thirty additional states use liens to collect reimbursement of medicaid funds indirectly from recipients who have pursued liable third parties. See Alaska Stat. § 47.05.075 (2006); Ariz. Rev. Stat. Ann. § 12-962 (2003); Ark. Code Ann. §§ 20-77-302 and 20-77-303 (2001); Colo. Rev. Stat. § 25.5-4-301 (5) (2007); Del. Code Ann. tit. 31, § 522 (1997); Fla. Stat. § 409.910 (2007); Ga. Code Ann. § 49-4-149 (2006); Haw. Rev. Stat. § 346-37 (Cum. Sup. 2007); 305 Ill. Comp. Stat. Ann. 5/5-13.5 (West 2001); Ind. Code Ann. § 12-15-8-1 (LexisNexis 2006); Iowa Code § 249A.6 (2001); La. Rev. Stat. Ann. § 46:446 (Sup. 2008); Me. Rev. Stat. Ann. tit. 22, § 14 (Sup. 2007); Mass. Ann. Laws ch. 18, § 5G, ch. 118E, § 22 (LexisNexis Sup. 2008); Minn. Stat. § 256B.042 (2006); Mo. Rev. Stat. § 208.215 (Sup. 2006); Mont. Code Ann. § 53-2-612 (2007); Nev. Rev. Stat. 422.293 (2007); N.Y. Soc. Serv. Law § 104-b (McKinney Sup. 2008); Okla. Stat. tit. 63, § 5051.1 (Sup. 2008); Or. Rev. Stat. § 416.540 (2007); 62 Pa. Cons. Stat. Ann. § 1409 (West 1996); Utah Code Ann. § 26-19-5 (2007); Vt. Stat. Ann. tit. 33, § 1910 (2001); Va. Code Ann. § 8.01-66.9 (2007); Wash. Rev. Code § 43.20B.060 (1998); Wash. Rev. Code § 74.09.180 (2001); Wis. Stat. Ann. § 49.89 (West 2008); Wyo. Stat. Ann. § 42-4-202 (2007); *Jones* v. *Balay*, 810 F. Sup. 1031, 1033 (W.D. Ark. 1992); *Eaton* v. *Arizona Health Care Cost Containment System*, 206 Ariz. 430, 433, 79 P.3d 1044 (2003); *California State Automobile Assn. Inter-Ins. Bureau* v. *Jackson*, 9 Cal. 3d 859, 870, 512 P.2d 1201, 109 Cal. Rptr. 297 (1973); *Myer* v. *Dyer*, 643 A.2d 1382, 1388–89 (Del. Super. 1993); *Weaver* v. *Malinda*, Louisiana Court of Appeal, Fifth Circuit, Docket No. 07-CA-708 (February 19, 2008); *Dept. of Human Resources* v. *Weaver*, 121 N.C. App. 517, 519–20, 466 S.E.2d 717, review denied, 342 N.C. 896, 467 S.E.2d 905 (1996); *State* v. *Baker*, 243 Wis. 2d 77, 85 n.7, 626 N.W.2d 862 (2001).

funds when third parties are found to be liable for a recipient's medical expenses by providing for assignment and subrogation rights; see General Statutes § 17b-265; and by allowing the state to assert a lien against funds recovered by medicaid recipients from third parties.[20] See General Statutes §§ 17b-93 and 17b-94. We therefore reject the defendants' claim that the federal medicaid statutes require states to pursue third parties directly for reimbursement, or, alternatively, if recovering the reimbursement indirectly, to reduce the reimbursement amount pro rata to compensate the recipient for attorney's fees and costs that he incurred.

Moreover, to the extent that there is any policy justification for requiring states to provide for pro rata reductions for a recipient's attorney's fees and costs incurred in pursuing liable third parties, we conclude that this

---

[20] As a final matter, we note that there are sound policy reasons that support our conclusion. See *Richards* v. *Dept. of Community Health*, 278 Ga. 757, 761, 604 S.E.2d 815 (2004), overruled on other grounds by *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 268, as stated in *In re Zyprexa Products Liability Litigation*, supra, 451 F. Sup. 2d 458. "Recipients are under no compulsion to undertake such a recovery, and if they do so, it is with knowledge of the assignment [of the right to recover medicaid expenses from a liable third party]. The existence of [the state's] lien is simply a factor to be considered when a recipient determines whether it is economically feasible to pursue a tort recovery." *Richards* v. *Dept. of Community Health*, supra, 762. Moreover, "when [the state] obtains the funds, the [m]edicaid recipient has already received the full benefit of that which [the state] now receives. . . . [The recipient] has already benefited from the [m]edicaid program and . . . significant public funds have been expended on his behalf for his medical care. He has not had to pay anything to receive this benefit, nor is he obligated to do so. However, the relevant statutes set as a condition of receiving that assistance that if he gains a recovery stemming from his injuries, [the state] will have a lien to recover the value of the public funds expended on his behalf." Id.; see also *Mitchell* v. *Coney Island Site 4A-1 Houses, Inc.*, 2002 WL 1311721 (N.Y. Sup. May 20, 2002) ("This court is not persuaded by the plaintiff's characterization that [the state's] recoupment is akin to a 'free ride' at the expense of the plaintiff. The reverse would otherwise certainly be true. The benefits previously extended to the plaintiff constitute not a gift but more apropos a conditional loan repayable upon the contingency created when the plaintiff successfully prevails in her tort action.").

is a matter more appropriately addressed by the legislature.[21] As Justice Borden noted when construing the

---

[21] Our conclusion that a pro rata reduction is not required by federal medicaid law, but, rather, is a policy matter that the legislature is free to address is bolstered by our survey of other jurisdictions. Thirty-four states have statutes that govern attorney's fees in the context of state recovery of medicaid funds. See Alaska Stat. §§ 47.05.070 (c) and 47.05.075 (2006); Ark. Code Ann. § 20-77-303 (2001); Cal. Welf. & Inst. Code § 14124.72 (d) (Deering 2006); Colo. Rev. Stat. § 25.5-4-301 (5) (2007); Haw. Rev. Stat. § 346-37 (h) (Cum. Sup. 2007); Idaho Code Ann. § 56-209b (4) and (6) (2002); Ind. Code Ann. § 12-15-8-8 (LexisNexis 2006); Iowa Code § 249A.6 (4) (2001); Kan. Stat. Ann. § 39-719a (b) (2000); Ky. Rev. Stat. Ann. § 205.626 (3) (LexisNexis 2007); La. Rev. Stat. Ann. § 46:446 (F) (Sup. 2008); Me. Rev. Stat. Ann. tit. 22, § 14 (1) (Sup. 2008); Md. Code Ann., Health–Gen. I § 15-120 (LexisNexis 2005); Minn. Stat. § 256B.042 (5) (2006); Miss. Code Ann. § 43-13-125 (2) (a) (2004); Mo. Rev. Stat. § 208.215 (9) and (11) (Sup. 2006); Mont. Code Ann. § 53-2-612 (3) (c) and (d) (2007); Nev. Rev. Stat. 422.293 (2007); N.H. Rev. Stat. Ann. § 167:14-a (III-a) (Cum. Sup. 2007); N.J. Stat. Ann. § 30:4D-7.1 (b) (West 1997); N.C. Gen. Stat. § 108A-59 (a) (2007); Ohio Rev. Code Ann. § 5101.58 (G) (West Sup. 2007); Okla. Stat. tit. 63, § 5051.1 (D) (1) (d) (Sup. 2008); Or. Rev. Stat. § 416.540 (2) (2007); 62 Pa. Cons. Stat. Ann. § 1409 (b) (7) (1996); S.C. Code Ann. § 43-7-440 (6) (Sup. 2007); S.D. Codified Laws § 28-6-7.1 (2004); Tenn. Code Ann. § 71-5-117 (c) (Sup. 2007); Utah Code Ann. § 26-19-7 (1), (2) and (4) (2007); Vt. Stat. Ann. tit. 33, § 1910 (i) (2001); Va. Code Ann. § 8.01-66.9 (2007); Wash. Rev. Code Ann. § 43.20B.060 (4) (West 1998); Wis. Stat. Ann. § 49.89 (3) (c) (5) (West 2008); Wyo. Stat. Ann. § 42-4-201 (e) (2007). Of the states that have not provided for attorney's fees explicitly by statute, their courts have determined either that the *state's* medicaid statutes incorporated equitable principles by reference that require a pro rata reduction or that the *state's* silence on attorney's fees prohibits a pro rata reduction. See *Jones* v. *Balay*, 810 F. Sup. 1031, 1034–37 (W.D. Ark. 1992); *Smith* v. *Alabama Medicaid Agency*, 461 So. 2d 817, 818–20 (Ala. Civ. App. 1984); *Matter of Estate of Miles*, 172 Ariz. 442, 445, 837 P.2d 1177 (App. 1992); *Jeffries* v. *Kent Vocational Technical Board of Education*, 743 A.2d 675, 677–79 (Del. Super. 1998); *Agency for Health Care Administration* v. *Wilson*, 782 So. 2d 977, 979–80 (Fla. App. 2007); *Richards* v. *Dept. of Community Health*, 278 Ga. 757, 761, 604 S.E.2d 815 (2004), overruled on other grounds by *Arkansas Dept. of Health & Human Services* v. *Ahlborn*, supra, 547 U.S. 268, as stated in *In re Zyprexa Products Liability Litigation*, supra, 451 F. Sup. 458; *Davis* v. *Chicago*, 59 Ill. 2d 439, 444–45, 322 N.E.2d 29 (1974); *Abston* v. *Aetna Casualty & Surety Co.*, 131 Mich. App. 26, 30–33, 346 N.W.2d 63 (1983); *Lundberg* v. *Jeep Corp.*, 582 N.W.2d 268, 270–71 (Minn. App. 1998); *Rahl* v. *Hayes 73 Corp.*, 99 App. Div. 2d 529, 530, 471 N.Y.S.2d 315 (1984); *White* v. *Sutherland*, 92 N.M. 187, 190–92, 585 P.2d 331, cert. denied, 92 N.M. 79, 582 P.2d 1292 (1978); *Anderson* v. *Wood*, 204 W. Va. 558, 563, 514 S.E.2d 408 (1999). We find it significant that those courts have not found that the *federal* medicaid statutes require such a reduction. In fact, our research reveals only one state, New Jersey,

predecessor to § 17b-94 in *State* v. *Ebenstein*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 251148 (July 6, 1981): "It may or may not be a wiser or [a] fairer policy to recognize the equitable [principle] . . . that . . . one enjoying the fruits of a recovery should be required to contribute to the costs of growing them. . . . [W]hether the state should be required to contribute to the legal fee for generating the fund is a matter of policy which the legislature has clearly resolved in the negative . . . . It is free, of course, to change that policy . . . . But unless and until it does this court cannot read [the predecessor statute to § 17b-94] to do so."

Indeed, we find it telling that the federal government has chosen to enact a pro rata reduction policy for medic*are* reimbursements, but has not done the same for medic*aid*. See 42 C.F.R. § 411.37 (a) (1) (2006) ("[m]edicare reduces its recovery to take account of the cost of procuring the judgment or settlement . . . if—[i] [p]rocurement costs are incurred because the claim is disputed; and [ii] [t]hose costs are borne by the party against which [centers for medicare and medicaid services] seeks to recover"). We also note that when the legislature amended what is now §17b-94 in 1984 to allow the aid recipient to retain more of his recovery from the third party tortfeasor, it made no provision for the recovery of attorney's fees and costs from the state. Public Acts 1984, No. 84-455, § 1; see *State* v. *Marks*, 239 Conn. 471, 479, 686 A.2d 969 (1996) ("In 1984, the statute was again amended to reduce the amount of the state's lien against the proceeds of causes of action held by public assistance beneficiaries to the lesser of 50 percent thereof or the amount of assistance paid,

where the court relied in part on the federal medicaid statutes to find that the state was required to reduce its reimbursement pro rata to compensate the recipient for his attorney's fees. See *Hedgebeth* v. *Medford*, 74 N.J. 360, 378 A.2d 226 (1977). We do not find this case persuasive, however, because it did not involve a lien and was decided on equitable principles that are not at issue in this appeal.

but the amendment did not disturb the rule of full reimbursement out of inheritances by such beneficiaries. See General Statutes [Rev. to 1985] § 17-83f. The obvious purpose of reducing the amount of the state's lien on such proceeds and, thereby, affording some of the recovery to the public assistance beneficiary, was to give an incentive to the beneficiary to prosecute his or her cause of action, thus benefiting the beneficiary and, possibly, the state as well, as described previously.").

Accordingly, for the aforementioned reasons, we conclude that the federal statutes that govern the medicaid program do not require the state to pursue third party tortfeasors directly for the reimbursement of medicaid funds, or, alternatively, if the state chooses to collect reimbursement indirectly from the medicaid recipient, to reduce the amount of the reimbursement pro rata to compensate the recipient for attorney's fees and costs that he incurred in pursuing the third party. We therefore conclude that Connecticut's reimbursement provisions, namely, §§ 17b-93, 17b-94 and 17b-265, satisfy the medicaid reimbursement requirements imposed by federal law.[22]

The judgment is affirmed.

In this opinion the other justices concurred.

[22] The defendants also claim that the trial court improperly increased the lien amount from an interim amount quoted to the defendants. The department of administrative services had informed the defendants by letter on May 23, 2001, that the interim amount of the lien was $69,708.16, which included $62,008.16 of medicaid funds. By subsequent letter on September 10, 2001, however, the department of administrative services increased the amount of medicaid funds to be reimbursed to $62,890.72, which in turn increased the total amount of the lien to $70,590.72. The defendants claim that the increase was not warranted because no additional medical expenses had been incurred by Peters in the interim and that they were prejudiced by the increase because the arbitration proceedings had ended before the amount of the lien was increased, leaving the defendants no opportunity to recover the additional amount from the tortfeasor. We decline to consider this claim because it is briefed inadequately. The defendants offer only a conclusory assertion that the amount was improperly increased, and offer no analysis or authority for this conclusion. See *Celentano* v. *Rocque*, 282

Conn. 645, 659, 923 A.2d 709 (2007); *Gangemi* v. *Zoning Board of Appeals,* 255 Conn. 143, 179, 763 A.2d 1011 (2001) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]).