******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

IN RE KAMERON N.*
(AC 44079)

Lavine, Moll and Cradle, Js.**

*Syllabus*

The respondent father appealed to this court from the judgment of the trial
court terminating his parental rights with respect to his minor child, K,
who had previously been adjudicated neglected. The father was a member of the Rosebud Sioux Tribe, and K was eligible for enrollment in
the tribe on that basis. The petitioner, the Commissioner of Children
and Families, and the Department of Children and Families, sent multiple
letters to the tribe pursuant to the Indian Child Welfare Act of 1978 (25
U.S.C. § 1901 et seq.) regarding K's involvement with the department.
These letters included, inter alia, one sent by registered mail, return
receipt requested, informing the tribe that a trial on the termination of
parental rights was scheduled, with the dates, times and location of the
trial. A social worker representing the tribe signed for that letter. The
tribe sent multiple letters to the petitioner indicating, inter alia, that K
qualified for enrollment, and it exercised its statutory (25 U.S.C. § 1911
(c)) right to intervene in the termination trial, but it did not appear. On
appeal, the father claimed that the tribe had not received proper notice
as required by federal law (25 U.S.C. § 1912 (a)) that the nature of
the termination proceedings was involuntary. *Held* that the trial court
properly determined that the notice provided to the tribe complied with
the requirements of 25 U.S.C. § 1912 (a); the plain and unambiguous
language of the statute requires that notice be given in any involuntary
proceeding but does not require the petitioner explicitly to state that a
termination proceeding is involuntary, the fact that the petitioner had
sent notice to the tribe at all was indicative that the proceeding was
involuntary, as tribes are not entitled by statute to intervene in voluntary
proceedings, and the letter the petitioner sent to the tribe identified the
proceeding as a termination of parental rights, which indicated the
involuntary nature of the proceeding.

Argued November 10, 2020—officially released February 16, 2021***

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Middlesex, Juvenile Matters at Middletown, where the Rosebud Sioux Tribe intervened; thereafter, the matter was tried to the court, *Woods, J.*; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court. *Affirmed*.

*Joshua Michtom*, assistant public defender, for the appellant (respondent father).

*Carolyn A. Signorelli*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner).

*Opinion*

CRADLE, J. The sole issue in this appeal from the judgment of the trial court terminating the parental rights of the respondent father, David N., with respect to his minor child, Kameron N., is whether the Rosebud Sioux Tribe (tribe) received proper notice, pursuant to the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1901 et seq., of the termination of parental rights proceedings involving the child, who is enrollable as a member of the tribe. We reject the claim of the respondent that the tribe did not receive adequate notice of the termination proceedings and, accordingly, affirm the judgment of the trial court.[1]

The following procedural history, set forth by the trial court, is relevant to the respondent's claim. The child was born to the respondent father and Brooke C. (mother) on December 19, 2009. The respondent and his mother, the child's paternal grandmother, are natives of the tribe. The Department of Children and Families (department) has been involved with this family since 2011, resulting in three substantiated allegations of neglect arising from issues of ongoing substance abuse, intimate partner violence, and inadequate supervision of the child. "On August 5, 2016, [the petitioner, the Commissioner of Children and Families] filed a neglect petition on behalf of [the child]. On November 10, 2016, [the child] was adjudicated neglected and placed under protective supervision. While [the child] was under protective supervision and under [his] mother's care, [the mother] continued to struggle with maintaining sobriety, which impacted her ability to properly parent [the child]. On May 19, 2017, [the petitioner] filed an [order for temporary custody] on behalf of [the child], which was sustained on May 26, 2017. On May 19, 2017, [the child] was placed in a nonrelative foster home where he continues to reside at this time. On June 15, 2017, [the child] was committed to [the care and custody of the petitioner]. On April 12, 2018, a permanency plan for [termination of parental rights] and adoption was approved by the court. A [termination] trial on this matter commenced on April 22, 2019, with subsequent trial dates of April 25, May 1, May 2, May 21, and June 17 of 2019."

On January 31, 2020, the trial court issued a memorandum of decision terminating the parental rights of the respondent and the child's mother. The court found that the petitioner had made the requisite efforts under ICWA to prevent the breakup of the family by providing remedial services and rehabilitative programs to both parents, but those efforts were unsuccessful. The court determined that the child had previously been adjudicated neglected and that neither parent had achieved a sufficient degree of personal rehabilitation within the meaning of General Statutes § 17a-112 (j) (3) (B) (i). The court further concluded that terminating their parental

rights was in the child's best interest. This appeal followed.

For the first time on appeal, the respondent challenges the adequacy of the notice of the termination proceedings afforded to the tribe pursuant to ICWA.[2] The following additional facts, which are undisputed, are relevant to the respondent's claim. At trial, the petitioner introduced into evidence the department's correspondence with the tribe pertaining to the child protection proceedings involving the child. The record reflects that, by way of a letter dated July 14, 2017, the department notified the tribe that a neglect petition had been filed on behalf of the child on August 9, 2016. On May 22, 2018, the department sent a letter to the tribe informing it that a permanency plan recommending the termination of parental rights and adoption, which was attached to the letter, had been filed on behalf of the child on February 22, 2018. On June 21, 2018, the department sent another letter to the tribe, referencing the prior neglect petition and a previous order for temporary custody and neglect adjudication, and informing the tribe that the permanency plan recommending termination had been granted by the court on April 12, 2018. All three of these letters were sent pursuant to ICWA, indicated that the department had information to believe that the child might be a member of the tribe, and advised the tribe of its right to intervene in the proceedings. The respondent does not claim that the tribe did not receive these notices.

On June 28, 2018, the tribe responded to the department, indicating that the child qualified for enrollment in the tribe on the basis of the respondent's enrollment. On July 6, 2018, the tribe sent another letter to the department indicating that it had determined that the child met the definition of "Indian Child" pursuant to 25 U.S.C. § 1903 (4). In that letter, the tribe stated: "If this is an involuntary child custody proceeding, we intend to intervene in the above named matter as a legal party. Send a copy of petition with names and addresses of all parties."

On September 19, 2018, the department sent a letter to the tribe notifying it of a "court date scheduled on behalf of [the child] on [November 13, 2018] at 9:30 a.m." The letter contained the address of the court, but did not indicate the purpose of the "court date."

On January 17, 2019,[3] the department sent a letter to the tribe informing it of a hearing date of April 9, 2019, to address pretrial motions, and notifying the tribe that the termination of parental rights trial was scheduled for April 22, April 25, and April 29, 2019. This letter included the times of the trial on each date and the address of the court. It was sent by registered mail with return receipt requested and was signed for by Shirley Bad Wound, a social worker representing the tribe.

On January 28, 2019, the tribe filed with the trial court, inter alia, a "Notice of Intervention by the Rosebud Sioux Tribe" stating that it was "invok[ing] its rights to intervene in this child custody proceeding pursuant to 25 U.S.C. § 1911 (c) . . . ."

On March 27, 2019, David Mantell, a clinical and forensic psychologist who was asked by the department to review this matter, called Bad Wound. Bad Wound acknowledged receipt of the documents sent by the department but told Mantell that she knew very little about the proceedings involving the child. After Mantell summarized the proceedings for Bad Wound, she indicated that the tribe's plan at that time was to enroll him as a tribal member. Despite exercising its right to intervene, the tribe took no further action and did not appear at the termination trial.

The trial court found that the respondent was a member of the tribe, and, accordingly applied the substantive law of ICWA in weighing the evidence presented at trial. The trial court also found that "notice of the court hearing dates were sent to the Rosebud Sioux tribe by the [department] . . . [but] [n]o representative of the tribe ever appeared in court." The respondent does not challenge the court's adjudicative or dispositional findings underlying the termination judgment. On appeal, the respondent claims only that notice to the tribe of the termination proceedings was deficient in that it did not indicate that the proceedings were involuntary. On that basis, the respondent argues that the judgment of termination should be reversed because the tribe did not receive proper notice of the termination proceedings under ICWA.[4] We are not persuaded.

We begin by noting that "Congress enacted ICWA in 1978 to address the [f]ederal, [s]tate, and private agency policies and practices that resulted in the wholesale separation of Indian children from their families. . . . Congress found that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions . . . . Although the crisis flowed from multiple causes, Congress found that non-Tribal public and private agencies had played a significant role, and that [s]tate agencies and courts had often failed to recognize the essential Tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families. . . . To address this failure, ICWA establishes minimum [f]ederal standards for the removal of Indian children from their families and the placement of these children in foster or adoptive homes, and confirms Tribal jurisdiction over [child custody] proceedings involving Indian children." (Footnotes omitted; internal quotation marks omitted.) United States Department of

the Interior, Office of the Assistant Secretary—Indian Affairs, Bureau of Indian Affairs, "Guidelines for Implementing the Indian Child Welfare Act," (2016), p. 5, available at bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf (last visited February 10, 2021).

With the foregoing principles in mind, we turn to the respondent's claim on appeal. The respondent contends that the notice afforded to the tribe of the termination proceedings involving the child did not comply with ICWA. To resolve the respondent's claim, we must apply the principles of statutory interpretation to the notice requirements of ICWA, set forth in 25 U.S.C. § 1912 (a). The interpretation of ICWA, like the interpretation of any statute, is a question of law that we review de novo. See *In re N.B.*, 199 P.3d 16, 18 (Colo. App. 2007). "Our interpretation of federal and state statutes is guided by the plain meaning rule. See, e.g., *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 400–401, 941 A.2d 868 (2008) ('With respect to the construction and application of federal statutes, principles of comity and consistency require us to follow the plain meaning rule for the interpretation of federal statutes because that is the rule of construction utilized by the United States Court of Appeals for the Second Circuit. . . . If the meaning of the text is not plain, however, we must look to the statute as a whole and construct an interpretation that comports with its primary purpose and does not lead to anomalous or unreasonable results.' . . .) . . . ." *State* v. *Peters*, 287 Conn. 82, 88, 946 A.2d 1231 (2008).

Section 1912 (a) of ICWA provides in relevant part: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . ." 25 U.S.C. § 1912 (a) (2018).

The respondent challenges the adequacy of the notice afforded to the tribe solely on the ground that the tribe was not informed of the involuntary nature of the termination proceedings.[5] The plain and unambiguous language of 25 U.S.C. § 1912 (a), however, does not require the department explicitly to tell the tribe that the proceeding was involuntary. It requires that notice be given "in any involuntary proceeding," and it sets forth the information that must be contained in that notice, such as the identities of the parties to the proceeding and the tribe's right to intervene. It does not require notification of the voluntary or involuntary nature of the proceedings. Moreover, because the tribe is not entitled to intervene in voluntary proceedings; *Catholic Social Services, Inc.* v. *C.A.A.*, 783 P.2d 1159, 1160 (Alaska

1989) (under ICWA, child's tribe is not entitled to notice of proceeding for voluntary termination of parental rights), cert. denied, 495 U.S. 948, 110 S. Ct. 2208, 109 L.Ed.2d 534 (1990); the fact that notice was sent to the tribe was indicative of the involuntary nature of the termination proceedings in this case. The January 17, 2019 letter sent by the department to the tribe, which provided notice of the three scheduled trial dates in what was identified as a termination of parental rights proceeding also was indicative of the involuntary nature of those proceedings. Because the plain and unambiguous language of 25 U.S.C. § 1912 (a) does not require the notice sent in an involuntary proceeding explicitly to indicate the involuntary nature of the proceedings, we cannot conclude, as the respondent contends, that the notice afforded to the tribe failed to comply with ICWA on that basis.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*** February 16, 2021, the date this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of the child's mother also were terminated. She has challenged the trial court's judgment in a separate appeal. See *In re Kameron N.*, 202 Conn. App.    ,    A.3d    (2021). Therefore, any reference to the respondent herein is to the father.

[2] It is well settled that such a claim may properly be raised for the first time on appeal. See *In re Marinna J.*, 90 Cal. App. 4th 731, 739, 109 Cal. Rptr. 2d 267 (2001). Additionally, ICWA specifically confers standing on a parent to petition a court to invalidate a termination proceeding upon showing that notice requirements have not been satisfied. See 25 U.S.C. § 1914 (2018).

[3] Although this letter is dated January 17, 2018, the parties stipulate that it was actually sent on January 17, 2019.

[4] The attorney for the child filed a letter with this court, pursuant to Practice Book §§ 67-13 and 79a-6 (c), adopting the brief of the petitioner.

[5] We note that "[t]he requisite notice to the tribe serves a twofold purpose: (1) it enables the tribe to investigate and determine whether the minor is an Indian child; and (2) it advises the tribe of the pending proceedings and its right to intervene or assume tribal jurisdiction." (Internal quotation marks omitted.) *In re N.R.*, 242 W. Va. 581, 590, 836 S.E.2d 799 (2019), cert. denied sub nom. *Rios* v. *West Virginia Dept. of Health & Human Resources*, U.S.    , 140 S. Ct. 1550, 206 L. Ed. 2d 385 (2020).

[6] The petitioner argues, in the alternative, that the notice sent to the tribe substantially complied with ICWA, and that any alleged deficiency with it was harmless. Because we conclude that the notice complied with the requirements set forth by the plain and unambiguous language of ICWA, we need not address the petitioner's alternative arguments. It is worth noting, however, that it is undisputed that the tribe had actual notice of the termination proceedings but took no action in them beyond intervening.